IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 7851 |
| v. | ) | |
| | ) | Magistrate Judge Nan R. Nolan |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Thomas filed this action seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 416, 423(d), 1381a. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and have filed cross-motions for summary judgment. For the reasons stated below, this case is remanded for further proceedings consistent with this opinion.

## I. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI of the SSA, a claimant must establish that he

or she is disabled within the meaning of the SSA.[1] *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001); *Keener v. Astrue*, 2008 WL 687132, at *1 (S.D. Ill. 2008). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?

2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform his or her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985).

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The SSI regulations are virtually identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq*.

"The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on May 30, 2006, alleging he became disabled on April 21, 2006, due to learning disability, type II diabetes, hairline fracture in his shin, and a dislocated right knee.[2] (R. at 16, 104, 105, 143, 148, 186, 191.) The applications were denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 16, 104–24.) In a prehearing case summary dated January 24, 2009, Plaintiff added a new allegation of chronic obstructive pulmonary disease. (*Id.* at 247–53.)

On January 27, 2009, Plaintiff, represented by counsel, testified at a video-teleconferencing hearing before an Administrative Law Judge ("ALJ"). (R. at 16, 46–103.) The ALJ also heard testimony from William Newman, M.D., a medical expert ("ME"), and James E. Bordieri, a vocational expert ("VE"). (*Id.*)

The ALJ denied Plaintiff's request for benefits on February 5, 2009. (R. at 16–26.) Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since April 21, 2006, his alleged onset date. (*Id.* at 18.) At step two, the ALJ found that Plaintiff's severe impairments consist of right knee patellar tendon tear by history—stable without surgery, diabetes mellitus type I without end-organ damage or neuropa-

---

[2] Plaintiff filed two prior SSI applications, on May 22, 1987, and November 2, 1992, both of which were denied on initial review. (R. at 16.) The Administrative Law Judge found no good cause to reopen them. (*Id.*)

thies, and borderline intellectual functioning, full-scale IQ 71, performance IQ 77. (*Id.* at 18–19.) At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 20.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff has the RFC to perform a "significant, if less than full, range of 'sedentary' work." (R. at 21.) Specifically, the ALJ concluded that Plaintiff is limited to work that restricts him to

> lifting and carrying at least 10 lbs. occasionally and frequently, standing and walking for 2 hours with the use of a right knee brace, and sitting for 6 hours in an 8-hour workday allowing for normal breaks. [Plaintiff] should never climb ladders, ropes, or scaffolds, work near hazards such as unprotected heights or close to dangerous, moving machinery, or with extremes of temperature, or near environmental irritants such as smoke, chemicals, odors, or fumes, and he also should not crouch, kneel, or crawl. In addition, [Plaintiff] should do no more than occasionally climb stairs or ramps, or balance, or stoop. [Plaintiff] would be moderately limited in his ability to carry out detailed or complex tasks, and in maintaining concentration, persistence, or pace. The undersigned defines "moderate" to mean would cause difficulties in the workplace, less than often than occasionally.

(*Id.*) Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff could not perform any past relevant work. (*Id.* at 24.) At step five, based on Plaintiff's RFC, his vocational factors and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including work as an assembler, weight-tester/quality control, and hand packager/hand-sorter. (*Id.* at 25.) Accordingly, the

---

[3] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

ALJ concluded that Plaintiff was not suffering from a disability as defined by the SSA. (*Id.*) The Appeals Council denied Plaintiff's request for review on June 10, 2009 (*id.* at 8–10, 12), and Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner, *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

Plaintiff raises several arguments in support of his request for a reversal and remand: (1) the ALJ failed to properly consider Plaintiff's mental impairments in both the listing analysis and the RFC assessment; (2) the ALJ made a legally insufficient credibility assessment; (3) the ALJ failed to consider whether Plaintiff's impairments functionally equaled Listing 1.02; (4) the ALJ failed to allow Plaintiff's attorney the opportunity to fully cross-examine the VE; and (5) the ALJ incorrectly relied on state-wide numbers of jobs rather than the number of jobs in the region where Plaintiff lives. The Court addresses each argument in turn.

### A. SSA Proceedings

As a preliminary matter, the Court is troubled by the ALJ's treatment of Plaintiff's counsel at the hearing. During a consultative examination, Plaintiff was administered the Wechsler Adult Intelligence Scale—Third Edition ("WAIS-III") (R. at 290), "the standard instrument in the United States for assessing intellectual func-

tioning," *Atkins v. Virginia*, 536 U.S. 304, 309 n.5 (2002); *see Vander Linden v. Astrue*, 2010 WL 1417931, at *4 (E.D. Wis. April 7, 2010) (WAIS-III "measures general intellectual skills"). "The WAIS–III is scored by adding together the number of points earned on different subtests, and using a mathematical formula to convert this raw score into a scaled score." *Atkins*, 536 U.S. at 309 n.5. At the hearing, Plaintiff's counsel questioned the VE about the significance of Plaintiff's subtest scores (R. at 95), which ranged from 3 to 9 (*id.* at 290). The VE testified that scores below 10 represented relative weaknesses, while scores above 10 indicated relative strengths. (*Id.* at 95–96.) He stated that persons with Plaintiff's scores would not necessarily be precluded from work, but "may have some difficulty functioning independently on a job. In other words they're going to require direct supervision." (*Id.* at 96.) Thereafter, Plaintiff's counsel attempted to cross-examine the VE to determine whether all the jobs for which he testified Plaintiff was qualified would provide direct supervision. (*Id.* at 98–100.) Before the VE could respond, the ALJ interrupted counsel's query, stated—incorrectly—that the VE had already responded to that question, and cut-off further questioning. (*Id.* at 100–01.)

SSA proceedings are nonadversarial. *Williams v. Massanari*, 171 F. Supp. 2d 829, 833 (N.D. Ill. 2001). It is the ALJ's responsibility to develop a full and fair record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). Furthermore, a claimant "is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d); *see* 20 C.F.R. § 404.929 ("At

the hearing you may appear in person or by video teleconferencing, submit new evidence, examine the evidence used in making the determination or decision under review, and present and question witnesses."). Thus, the ALJ "shall allow the parties or their designated representatives" to "ask the witnesses any questions material to the issues." 20 C.F.R. § 404.950(e).

Here, the ALJ did not allow Plaintiff's counsel to fully cross-examine the VE on whether the jobs he had identified could be performed without direct supervision. (R. at 98–102.) Such questions are material to determining whether jobs exist in significant numbers in the national economy that Plaintiff can perform. *See Adkins v. Astrue*, 2010 WL 2545185, at *3 (S.D. Ind. June 18, 2010) ("Adkins' counsel had a right to cross-examine Dr. Stump. Dr. Stump testified that Adkins would require a 'sit/stand' option and Adkins' attempt to ask questions concerning that specific opinion was not improper. The question was 'material to the issues' as the topic was within the scope of the expert's testimony and his expertise."); *cf. Moore v. Sec'y of HHS*, 1992 WL 300849, at *2 (W.D. Mich. Aug. 10, 1992) ("Further cross-examination was unnecessary, as the VE had already fully established that plaintiff possessed transferable semi-skills. Additional questioning would not have altered the VE's unambiguous conclusions."); *see also Marin v. Comm'r*, 535 F. Supp. 2d 1263, 1265 (M.D. Fla. 2008) ("It is indisputable that the ability to cross-examine witnesses is fundamental to due process.").[4]

---

[4] The ALJ also acted in an unprofessional manner by interjecting sarcastic comments during counsel's questioning of the witnesses (*e.g.*, R. at 60 ("I don't know how somebody can answer that question."), 78 ("Well that's all very interesting but heads up, if you see any other judges from my office we all have this hang up about we need evidence first and

On remand, the Court urges the Commissioner to assign this matter to a different ALJ for all further proceedings. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996).

## B. Listing 12.05C

Plaintiff contends that the ALJ failed to properly consider Plaintiff's limited intellectual ability. (Mot. 4–6.) Specifically, Plaintiff asserts that the ALJ failed to mention Plaintiff's low IQ score of 70 and failed to discuss whether Plaintiff's mental limitations met the requirements for Listing 12.05C. (*Id.* 4–5.)

### 1. Applicable Law

A claimant is considered disabled if he or she has an impairment that meets or equals one of a list of specific impairments enumerated in the Listings of Impairments. *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999); *see* 20 C.F.R. §§ 404.1520(d), 416.920(d), pt. 404, subpt. P, app. 1. "The Listing describes impairments that are considered presumptively disabling when a claimant's impairments meet the specific criteria described in the Listing." *Maggard*, 167 F.3d at 379–80; *see* 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant can also demonstrate presumptive disability by showing that his impairment is accompanied by findings that are at least of equal severity to a listed impairment. *Maggard*, 167 F.3d at 380; 20 C.F.R. §§ 404.1526, 416.926. The claimant bears the burden of demonstrating that

---

then argument and not the other way around."), 86 ("Now back off from what you're doing right now and listen."), 95 ("[Counsel], you're lucky. Okay? So what, go ahead [counsel], you've got your psychologist.")) and frequently interrupting counsel (*id.* at 57, 59, 60, 64, 86, 92, 93, 94, 97, 98–99, 101).

his condition meets or equals all of the criteria of a listed impairment. *Maggard*, 167 F.3d at 380.

Listing 12.05 defines mental retardation as "a significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." Under 12.05C, a claimant is considered disabled due to mental retardation when he has "[a] valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function," 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C. When considering a claimant's IQ scores, the regulations require the ALJ to evaluate the claimant's intelligence according to the lowest of the scores. *Id.* § 12.00D6c ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.").

### 2. *The Relevant Medical Evidence*

In September 2006, David J. Warshauer, Ph.D., conducted a psychological evaluation of Plaintiff on behalf of the Commissioner. (R. at 289–91.) He reported that Plaintiff was in special education classes throughout school. (*Id.* at 290.) Dr. Warshauer performed a WAIS-III evaluation, during which Plaintiff "seemed to want to do his best." (*Id.*) Plaintiff's scaled scores on the 11 subtests ranged from 3 through 9. (*Id.*) These scaled scores yielded a Verbal IQ of 70, a Performance IQ of 77, and a Full Scale IQ of 71. (*Id.*) Dr. Warshauer observed that while Plaintiff's

"three IQ's are not significantly different from each other . . ., his range of scaled scores was fairly pronounced (3–9) indicating that in certain areas he does quite poorly and in other areas he is normal or very close to normal." (*Id.*) Dr. Warshauer diagnosed Plaintiff with Borderline Intellectual Functioning and assigned him a Global Assessment of Functioning ("GAF") score of 50.[4]

### 3. Analysis

In his opinion, the ALJ mentioned that Dr. Warshauer measured Plaintiff's Full Scale IQ at 71 and his Performance IQ at 77, but failed to acknowledge that Plaintiff's Verbal IQ score was 70. (R. at 18–19, 20, 22.) The ALJ stated that [n]either [Plaintiff's] '71' full-scale IQ [n]or his '77' performance IQ measured on September 15, 2006 would be at 'Listing Level.'" (*Id.* at 22.) However, the Verbal IQ score of 70 was at listing level. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C; *see id.* § 12.00D6c (requiring the ALJ to evaluate the claimant's intelligence according to the lowest of the IQ scores). Further, there is evidence of a severe knee problem and diabetes (R. at 18–19), and the record indicates that Plaintiff was in special education as a child (*id.* at 290). Arguably, therefore, Plaintiff met the requirements for Listing 12.05C. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C (A claimant is considered disabled due to mental retardation when he has "[a] valid verbal, performance, or full scale

---

[4] The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000) (hereinafter DSM). A GAF score of 41–50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34.

I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.").

The ALJ's discussion of Listing 12.05(C) was legally insufficient and not supported by substantial evidence. The ALJ's analysis was conclusory: "[Plaintiff's] mental impairment does not meet or medically equal the criteria of listing 12.02, 12.05, or 12.07, etc. . . . [T]he undersigned also finds that the evidence fails to establish the presence of the 'paragraph C' criteria." (R. at 20.) The ALJ's failure to even mention the low score of 70 makes it unclear whether the ALJ even considered it in his analysis. *See Barnett v. Barnham*, 381 F.3d 664, 670 (7th Cir. 2004) ("Ultimately, though, even apart from the ALJ's misapprehension of the evidence, we would conclude that his two-sentence consideration of the Listing of Impairments is inadequate and warrants remand. All that the ALJ ever said is that he disbelieved Barnett's testimony concerning the number of seizures she was experiencing; he never affirmatively determined how many seizures he believed Barnett actually experienced. And, thus, we cannot discern if the ALJ ever considered whether Barnett's impairment equals Listing 11.03 despite her assumed lack of credibility.") (citations omitted); *see also Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) ("The ALJ also failed to note that Dr. Frey's evaluation mentioned that Craft's mental functioning had 'been reduced 80-90%.' Although this statement seems inconsistent with some of Dr. Frey's other conclusions about Craft, we cannot tell whether the ALJ considered and rejected this piece of evidence because she did not mention it."); *Green v. Shalala*, 51 F.3d 96, 102 (7th Cir. 1995) (ALJ's decision not supported by

substantial evidence where he "did not grapple with significant record evidence in his decision").

The Commissioner contends that "the ALJ's having overlooked Thomas's IQ score of 70 is harmless error where Thomas has not met his burden of showing that he would meet Listing 12.05C had the ALJ acknowledged the score." (Resp. 3.) Defendant argues that Dr. Warshauer's diagnosis of Borderline Intellectual Functioning precludes a finding that Plaintiff meets Listing 12.05C. (*Id.* 2–3.) The Commissioner asserts that "the Seventh Circuit found in *Maggard* that an ALJ reasonably found that claimant did not meet Listing 12.05C despite 68 IQ in part because the examiner diagnosed Borderline Intellectual Functioning rather than mental retardation." (Resp. 3.) On the contrary, the Seventh Circuit found reasonable the ALJ's finding that the IQ score of 68 was *invalid* partly based on a diagnosis of borderline intellectual functioning. 167 F.3d at 380. In any event, the ALJ in *Maggard* provided a detailed analysis of the claimant's IQ test, unlike the ALJ in this case. *See Vander Linden*, 2010 WL 1417931, at *6. Further, Dr. Warshauer's DSM diagnosis of Borderline Intellectual Functioning has no correlation to an SSA determination of ability to perform full-time work. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (observing that the regulations do not require a claimant to meet the diagnostic definition of a listing, but rather must only meet the diagnostic criteria delineated in the listing).

Defendant's reference to *Strunk v. Heckler*, 732 F.2d 1357 (7th Cir. 1984) (Resp. 3), is also inapposite. In *Strunk*, the Seventh Circuit ruled that the Commissioner is

not required "to make a finding of mental retardation based *solely* upon the results of a standardized intelligence test in its determination of mental retardation." 732 F.2d at 1360 (emphasis added). However, as discussed above, in addition to her 70 IQ score, Plaintiff has presented evidence of severe physical impairments and an onset of mental illness prior to age 22, together which strongly suggest that he meets the requirements for Listing 12.05C.

In any event, the issue is not whether Plaintiff meets the requirements of Listing 12.05C, but rather the ALJ's failure to discuss the listing in any meaningful way. It is only after evaluating all the evidence that the ALJ could have made an informed decision as to whether Plaintiff's impairments met or medically equal Listing 12.05C. *See Robinson v. Astrue*, 667 F. Supp. 2d 834, 843 (N.D. Ill. 2009) ("The Commissioner claims that the above-mentioned evidence is ultimately insufficient to support a finding of disability. But this misses the point: the question is not whether the ALJ should have concluded that Robinson met Listing 11.19's requirements; it is only whether the evidence was substantial enough to require the ALJ to discuss the Listing. Indeed, in arguing that the ALJ was not required to discuss Listing 11.19 due to the insufficiency of the evidence, the Commissioner puts the cart before the horse. It is only after reviewing the evidence that the ALJ could have made an informed determination as to whether the Listing's requirements had been met."). Indeed, by speculating what the ALJ could have concluded based on the evidence, the Commissioner "violated the *Chenery* doctrine (see *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, 63 S. Ct. 454, 87 L. Ed. 626 (1943)), which forbids an agency's

lawyers to defend the agency's decision on grounds that the agency itself had not embraced." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

On remand, the ALJ shall reevaluate whether Plaintiff's impairments meet or equal the requirements of Listing 12.05C, taking into account the Verbal IQ score of 70.

## C. The ALJ's Determination of Plaintiff's Mental RFC

The ALJ found that Plaintiff has right knee patellar tendon tear by history—stable without surgery, diabetes mellitus type I without end-organ damage or neuropathies, and borderline intellectual functioning, full-scale IQ 71, performance IQ 77. (R. at 18–19.) Based upon "the totality of medical opinions in the record," the ALJ concluded that Plaintiff "would be moderately limited in his ability to carry out detailed or complex tasks, and in maintaining concentration, persistence, or pace." (*Id.* at 21.) The ALJ defined "moderate" to mean that Plaintiff's mental impairment "would cause difficulties in the workplace, less than often than occasionally." (*Id.*)

Plaintiff contends that the ALJ erred because he failed to sufficiently account for Plaintiff's mental limitations in formulating the RFC assessment. (Mot. 6–8.) Plaintiff argues that "[t]he ALJ's definition of 'moderate' does not meaningfully correspond in any way to the [SSA's] guidelines." (*Id.* 6.) Moreover, Plaintiff asserts that "the ALJ failed to account for specific limitations revealed by Plaintiff's WAIS-III scores." (*Id.* 7.) Specifically, Plaintiff performed especially poorly in comprehension, arithmetic, information, and vocabulary. (*Id.*)

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); Social Security Ruling ("SSR")[5] 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft*, 539 F.3d at 676. In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

Here, the ALJ failed to construct a logical bridge between the evidence and Plaintiff's mental RFC. The ALJ's definition of "moderate" is nonsensical. "'Occa-

---

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

sionally' means occurring from very little up to one-third of the time." SSR 83-10, at *5. Thus, if "moderate" difficulties in the workplace occur less than occasionally, they cause no difficulties at all.

Even assuming that the ALJ's description of less than occasional difficulties in maintaining concentration, persistence, or pace was intended to correspond to a particular limitation, the ALJ did not include this limitation in his hypothetical question to the VE. (*See* R. at 88–89.) "When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record. More specifically, the question must account for documented limitations of 'concentration, persistence or pace." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (citations omitted). The ALJ's hypothetical question to the VE did include other limitations related to handling detailed instructions, dealing with supervisors and coworkers, and responding appropriately to work pressures and changes in the work setting. (R. at 89.) However, because the ALJ's RFC determination was inconsistent with the limitations given to the VE, it constitutes error. *See Tarbush v. Astrue*, 2010 WL 438155, at *5 (N.D. Ill. Feb. 2, 2010) ("The import of *Stewart* is that questions limiting an individual to simple, routine work do not fully describe the individual's limitations if he is also limited in concentration, persistence and pace. To say that Plaintiff can do a simple and routine job is not necessarily to say they she has the concentration or persistence to do it for a sustained period at an acceptable pace. This is true even if the medical evidence demonstrates that Plaintiff can perform simple, routine and predictable jobs.").

The Commissioner argues that "[t]he ALJ's decision obviously contains a typographical error: the ALJ *likely meant* to mirror the regulatory definition of 'marked,' which is 'more than moderate but less than extreme.'" (Resp. 3) (emphasis added). However, by speculating what the ALJ might have meant, the Commissioner "violated the *Chenery* doctrine . . ., which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced." *Parker*, 597 F.3d at 922. In any event, the medical evidence supports more than minimal mental limitations in Plaintiff's RFC. Dr. Warshauer found that Plaintiff's WAIS-III scores were especially low in vocabulary, arithmetic, information, comprehension, and digit symbol/coding. (R. at 290.) He opined that Plaintiff would likely have difficulty handling financial affairs because of his low score on the arithmetic subtest. (*Id.* at 291.) Similarly, the state agency doctor concluded that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions and to maintain attention and concentration for extended periods. (*Id.* at 306.)

On remand, the ALJ shall reevaluate Plaintiff's mental impairments in determining his RFC.

### D. The ALJ's Credibility Finding

Plaintiff asserts that the ALJ made an improper credibility determination. (Mot. 8–11.) He contends that the reasons given by the ALJ were insufficient, failing to fully account for the medical evidence, and the ALJ impeded Plaintiff's counsel's line of questioning at the hearing. (*Id.*)

### *1. Applicable Law*

In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). If a claimant's symptoms are not supported by medical evidence, the ALJ may not ignore available evidence. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p.

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss*, 555 F.3d at 561. The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d

at 942 (citation omitted); *see* SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

### 2. Analysis

Plaintiff testified that he was unable to work because of his diabetes, pain in his right leg, right hand and lower back, lack of strength in his right hand, and being a slow learner (R. at 67, 75–76, 81.) He stated that when he walks to the store, he has to stop every half block to rest his legs because of the pain. (*Id.* at 82.) He can help his wife wash the dishes by leaning up against the sink and lifting his leg to avoid putting any pressure on it. (*Id.* at 83.)

In his decision, the ALJ made the following credibility determination:

> Subjective complaints are considered credible **only** to the extent that they are supported by the record, as summarized in the text of this decision. Therefore, after careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. at 24.) The ALJ's credibility analysis is mere boilerplate that "yields no clue to what weight the trier of fact gave [Plaintiff's] testimony." *Parker*, 597 F.3d at 922 (reviewing similar language and finding that "[i]t is not only boilerplate; it is meaningless boilerplate[; t]he statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony"); *see Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003) ("This is precisely the kind of conclusory determination SSR 96-7p prohibits.

Indeed, the apparently post-hoc statement turns the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating the Brindisis' credibility as an initial matter in order to come to a decision on the merits."). The ALJ does not explain which of Plaintiff's allegations were credible, which were incredible, or provide reasoning in support of his findings, *see Groneman v. Barnhart*, 2007 WL 781750, at *11 (N.D. Ill. March 9, 2007) ("The ALJ may have provided a *reason* for rejecting Mr. Groneman's allegations—because he did not seek treatment and follow through with medication—but he did not provide *reasoning*."). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2.

Under the circumstances, none of the reasons provided by the ALJ for rejecting Plaintiff's credibility are legally sufficient or supported by substantial evidence. First, the ALJ's statement that Plaintiff "does not apparently take any pain medication at all" (R. at 23) is not supported by the record. On July 20, 2006, Plaintiff was prescribed Percocet[6] and Ibuprofen 800mg. (*Id.* at 336.) In September 2006, Plaintiff reported being in constant pain, which interrupted his sleep, and taking aspirin to relieve the pain. (*Id.* at 340.) The ALJ cannot discuss only those portions of the re-

---

[6] Percocet is a drug that contains acetaminophen and oxycodone. Oxycodone is an opiate that is used to relieve moderate to severe pain. *See* <www.nlm.nih.gov/medlineplus/druginformation.html> (last visited Oct. 6, 2011).

cord that support his opinion. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence. It is not enough for the ALJ to address mere portions of a doctor's report.") (citations omitted); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion.").

Second, the ALJ's rejection of Plaintiff's credibility because he "never rescheduled knee surgery" (R. at 23) is contrary to law. The ALJ never inquired into why Plaintiff chose not to have the surgery. The evidence indicates that Plaintiff was "very apprehensive about going through the surgery given that he has had numerous relatives struggle with severe diabetic infections. He seemed relieved that we would not be going through the surgery today at this point. He would like to try a bracing operation before proceeding with patella tendon reconstruction." (*Id.* at 348.) SSA rules caution the ALJ not to "draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, at *7. The ALJ's failure to discuss Plaintiff's reasons constitutes error.

The Commissioner acknowledges that the ALJ's credibility analysis "was not flawless," but argues that "it was far from 'patently wrong.'" (Resp. 4.) The Commissioner contends that because surgery is expected to improve a claimant's impair-

ment, a claimant cannot obtain benefits if he refuses the prescribed course of treatment. (*Id.*) However, the ALJ did not reject Plaintiff's credibility on this basis; instead, the ALJ found that refusing the surgery "appears to contradict and undermine [Plaintiff's] contention that he was in severe pain. (R. at 23.) By making an argument that was not in the ALJ's decision, the Commissioner "violated the *Chenery* doctrine. *See Parker*, 597 F.3d at 922.

On remand, the ALJ shall reevaluate Plaintiff's complaints of pain with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

## E. Listing 1.02

Plaintiff contends that the ALJ erred by failing to consider whether Plaintiff's impairments medically equaled Listing 1.02. (Mot. 11–14.) Listing 1.02 states that a dysfunction of a joint constitutes a disability if it is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02. "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* pt 404, subpt. P, app. 1 § 1.00B2b(1).

Prior to the hearing, Plaintiff's counsel submitted a memorandum setting forth his theory of disability (R. at 247–53), which included a lengthy discussion as to how Plaintiff's impairments were medically equal to Listing 1.02 (*id.* at 248–51). In his memorandum, "Plaintiff argued that while he did not have joint space narrowing, bony destruction, or ankylosis, his knee impairment required him to wear a knee brace at all times, which resulted in an inability to ambulate effectively, which was sufficient to medically equal Listing 1.02." (Mot. 12; *see* R. at 248.) The ALJ did not acknowledge Plaintiff's argument, did not obtain medical opinion on the issue of medical equivalence and did not analyze whether the evidence supported a finding that Plaintiff's impairments equaled the Listing. (Mot. 12.)

At step three, a claimant is presumptively disabled if he has an impairment that meets or equals an impairment found in the Listings of Impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § pt. 404, subpt. P, app. 1; *see Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "The Listing describes impairments that are considered presumptively disabling when a claimant's impairments meet the specific criteria described in the Listing." *Maggard*, 167 F.3d at 379–80; *see* 20 C.F.R. §§ 404.1525(a), 416.925(a). "A claimant may also demonstrate presumptive disability by showing that her impairment is accompanied by symptoms that are equal in severity to those described in a specific listing." *Barnett*, 381 F.3d at 664; *see* 20 C.F.R. §§ 404.1526(a), 416.926(a). "Thus, an impairment is equivalent to a listed impairment 'if it is at least equal in severity and duration to the criteria of any listed impairment.'" Frank S. Bloch, *Bloch on Social Security* § 3.26 (May 2011)

(quoting 20 C.F.R. §§ 404.1526(a), 416.926(a)). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d at 664; *see Brindisi*, 315 F.3d at 786.

Medical equivalence may be found in one of three ways: (1) the claimant's impairment is included in the listings but one or more of the criteria set out in the listing for that impairment cannot be met; (2) the claimant's impairment is not included in the listings, but another listed impairment can be used as a guide; or (3) the claimant has a number of impairments that do not meet or equal a listed impairment, but can be combined together to meet an analogous impairment in the listings. *See* 20 C.F.R. §§ 404.1526(b); 416.926(e); *Bloch on Social Security* § 3.26. In determining whether a claimant's impairment is medically equivalent to a listed impairment, the SSA will consider all relevant evidence. 20 C.F.R. §§ 404.1526(c), 416.926(c) ("When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding.").

In his decision, the ALJ did not discuss whether Plaintiff's impairment medically equals Listing 1.02. The ALJ's failure to discuss Listing 1.02 constitutes legal error. *See Barnett*, 381 F.3d at 664 ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."). Further, by not acknowledging Plaintiff's argument, it is unclear whether the ALJ even considered Plaintiff's claim.

*See Brindisi*, 315 F.3d at 786 (ALJ's conclusion that "none of these impairments meet the requirements of an impairment listed in Appendix 1 to subpart P of regulation no. 4 . . . [is] devoid of any analysis that would enable meaningful judicial review"); *Barger v. Astrue*, 2009 WL 807587, at *5 (S.D. Ind. March 25, 2009) (concluding "that when an ALJ is specifically asked to consider a listing by number both in the oral argument portion of the hearing and in the posttrial brief, the failure to specifically address that listing does require remand where the Court cannot trace the path of reasoning"). Nor did the ALJ analyze whether Plaintiff's knee brace created an extreme limitation of the ability to walk. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("What is troubling is that the ALJ, in addition to not mentioning Listing 1.04A, did not evaluate any of the evidence on its required criteria that is favorable to Ribaudo.").

Moreover, the ALJ prevented Plaintiff's counsel from questioning the ME on this issue at the hearing. Counsel questioned the ME about whether a knee immobilizer brace compares to the functional limitation from ankylosis or a joint that has fused. (R. at 64.) The ALJ interjected and refused to allow the line of questioning:

> ALJ: Hang on just a second. This is intellectually very interested [sic] but if the evidence in this case doesn't indicate the condition that you want to ask about then you can't ask about it. I'm not going to go off into speculation. Don't answer that question and go on to the next one, please. Do you have any more questions?

> ATTY: I'm looking at my notes.

> ALJ: And I'm inferring that the evidence does not show any fusion on the part of the claimant. If it does you got a full opportunity to talk to this doctor about it but if it doesn't then I don't want to hear about it.

ATTY: It does not show fusion and what I was, just to explain my line of questioning Your Honor, I was exploring whether an immobilized knee equals a fused knee.

ALJ: And that's speculative and that's enough said.

(*Id.* at 64–65.) While the ME's testimony was not critical to the Listing 1.02 issue, *see B.C. v. Astrue*, 2011 WL 1547054, at *4 (N.D. Ill. April 22, 2011) (ruling that medical equivalence can be determined with nonmedical evidence), as discussed more fully above, Plaintiff's counsel should have been given a full opportunity to present her case at the hearing. *See* 20 C.F.R. § 404.950(e) (The ALJ "shall allow the parties or their designated representatives" to "ask the witnesses any questions material to the issues.").

On remand, the ALJ shall explicitly evaluate whether Plaintiff's impairments meet or equal the requirements of Listing 1.02, allowing Plaintiff a full opportunity to present his case.[7]

## F. Summary

In sum, the ALJ has failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing

---

[7] Plaintiff also argues that the ALJ incorrectly relied on the numbers of jobs in the entire state, rather than the number of jobs in the region where he lives. (Mot. 14–15.) Plaintiff contends that the Seventh Circuit's decision in *Barrett v. Barnhart*, 355 F.3d 1065 (7th Cir. 2004), requires the ALJ to account for the number of jobs in Plaintiff's geographical location, rather than the entire state. (Mot. 14–15.) The Court disagrees. Along with other courts, the Court believes *Barrett* does *not* stand for the proposition that, as a matter of law, the jobs identified by a VE must exist within the claimant's region. *See, e.g., Dickman v. Astrue*, 2009 WL 1107807, at *8 (E.D. Wis. April 23, 2009); *Knox v. Barnhart*, 2006 WL 3201913, at *5–6 (S.D. Ind. Aug. 22, 2006).

meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reevaluate Plaintiff's mental and physical impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. The ALJ shall explicitly consider whether Plaintiff's impairments meet Listing 1.02 or Listing 12.05C.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [Doc. 14] is **GRANTED**, and Defendant's Cross-Motion for Summary Judgment [Doc. 31] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: October 19, 2011

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge